UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE: )
) Case No. 15-22180-SBB
HAIMARK LINE, LTD. )
EIN:   46-5744608 )
) Chapter 11
)
Debtor. )

## MOTION TO REJECT EXECUTORY CONTRACT
### (CATERING MANAGEMENT AGREEMENT)

The Debtor, Haimark Line, Ltd. ("Debtor"), by and through its attorneys, Kutner Brinen Garber, P.C., moves the Court pursuant to 11 U.S.C. § 365 and Federal Rules of Bankruptcy Procedure 6006 and 9014 for approval of the rejection of an executory contract entered into by and between FleetPro Leisure, Ltd. ("Leisure") and the Debtor, and as grounds therefor, states as follows:

1.      The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on October 30, 2015 ("Petition Date") and remains a Debtor in Possession.

2.      The Debtor owns and operates a cruise line based out of Lakewood, Colorado.

3.      Prior to the Petition Date, the Debtor and Leisure entered into a Catering Management Agreement (the "Agreement") dated September 10, 2014.  The Agreement provides for Leisure to provide certain hotel and catering services, and other related services, for the ship chartered by the Debtor, the M/V Sea Voyager, which was renamed the Saint Laurent (the "Ship").  A copy of the Agreement is attached hereto as Exhibit A.

4.      The Agreement is for a term of five (5) years, commencing on May 1, 2015.  In exchange for the services provided by Leisure, the Debtor is required to pay fees to Leisure based on a number of factors, including, but not limited to, the number of passengers and staff aboard the Ship and a per day rate when there are no passengers on the Ship.  Pursuant to the Agreement, the Debtor is to pay Leisure the guaranteed portion of its fee on a monthly basis in advance, and is to pay Leisure for any adjustments thereto after such fees have been incurred. The Agreement provides for the fees to increase on an annual basis.

5.      The Agreement is executory in nature in that it requires the Debtor, among other things, to make payments to Leisure, and requires Leisure, among other things, to provide certain hotel and catering services and other related services to the Debtor.

6.     The Debtor seeks Court approval to reject the Agreement. The Debtor has also filed for Court approval to reject the Time-Charterparty Agreement for it to charter the Ship. Since the Debtor is rejecting the Time-Charterparty Agreement, the Debtor is no longer chartering the Ship, and, as such, no longer requires the services Leisure is to provide for the Ship pursuant to the Agreement.

7.     The Debtor, in an exercise of its business judgment, has determined that it is in its best interest to reject the Agreement.

8.     Courts generally review the rejection of executory contracts and unexpired leases under the business judgment standard. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1983). A debtor's decision to assume or reject a lease should be approved when the debtor decides, in good faith, that the assumption or rejection would be beneficial to the estate. *In re Minges*, 602 F.2d 38, 43 (2nd Cir. 1979). Court approval under section 365(a) "should be granted as a matter of course." *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981).

9.     The Debtor has determined that rejection of the Agreement is in its best interest. Further, rejection of the Agreements is in the best interest of creditors and the estate since the Debtor no longer requires the services provided pursuant to the Agreement and rejection of the Agreement will allow the Debtor to lower its expenses.

10.     The Debtor requests that the Court approve the rejection of the Agreement as of the date of this Motion, November 17, 2015.

WHEREFORE, the Debtor prays that the Court make and enter an Order approving the Debtor's rejection of the Agreement with Leisure *nunc pro tunc* November 17, 2015, and for such further and additional relief as to the Court may appear appropriate.

Dated: November 17, 2015                    Respectfully submitted,

By:_____
Jeffrey S. Brinen #20565
Benjamin H. Shloss, #39276
**KUTNER BRINEN GARBER, P.C.**
1660 Lincoln Street, Suite 1850
Denver, CO 80264
Telephone: (303) 832-2400
Telecopy: (303) 832-1510
E-Mail: jsb@kutnerlaw.com

## CATERING MANAGEMENT AGREEMENT

THIS AGREEMENT (the "Agreement") is made this 10<sup>Th.</sup> day of September, 2014.

### 1.   PARTIES TO THE AGREEMENT

It is mutually agreed between the parties below that this Catering Management Agreement for the vessel described in **ANNEX I** shall be performed subject to the conditions contained herein.

(a)   **Haimark Line, Ltd.**
      **1536 Cole Boulevard, Suite 333**
      **Lakewood, CO 80401**

                                        *hereinafter called the "Principal"*

*and*

(b)   **FleetPro Leisure, Ltd.**
      **4770 Biscayne Blvd. PH-A**
      **Miami, Fl. 33137;**            *hereinafter called the "Caterer"*

### 2.   SUMMARY OF COMMERCIAL TERMS

(a)   **Passenger Rate per day/per passenger (See ANNEX V)**

      (i)    Daily passengers per day, except during drydocks, in which case the Guaranteed Rate will be in force (See **ANNEX V**).

      (ii)   $12.50 gratuity per day, per passenger Suggested.

(b)   **Guaranteed Rate per day without passengers (See ANNEX V)**

(c)   **Principal Staff per day/per person (See ANNEX V)**

(d)   **All onboard revenues are for the account of the Caterer as per ANNEX V**

(e)   **Extra meals/per person** "Extra meals" are defined as any meals served to any person that is not considered part of the standard manning complement or registered as passengers for a particular voyage (See **ANNEX V**), and eating in the ship's premises, such as Crew or Officers Mess or passenger dining room, e.g., extra crew, supernumeraries, pilots, guests, superintendents, family members or visitors.

### 3.   SERVICES PROVIDED BY THE CATERER

(a)   Hotel and catering services to be in accordance with **ANNEX II.**

**Exhibit A**

(b)    Procurement free alongside of provisions and catering consumables. Hotel crew will load the stores if allowed by local regulations.

(c)    Provision and preparation of required meals for all Guests, contractors, officers, crew members and visitors, of good quality and in sufficient quantity. Regarding exclusions for required meals for officers and crew members. (See **ANNEX II**)

(d)    Provision of instructions and communication with Vessel regarding the catering service.

(e)    Preparation of capital expenditure plans as requested by the Principal.

(f)    Management and quality control of the Catering Services in accordance with the instructions of Principal.

(g)    Preparation and printing of menus, bar list, wine list, etc.

(h)    Provision and management of cleaning services covering all public areas including lounges, meeting rooms, accommodation, hallways, stairways, and entire crew public areas.

(i)    Provision and management of laundry services if required (See **ANNEX V**)

(j)    Provision and management of hotel front and back office services.

(k)    All onboard revenues are for the account of the Caterer with the exception of communications and shore excursions, any bad debt arising from clients not settling their onboard accounts will be borne by the Caterer.

(l)    Purchasing and delivery of depleted catering materials of following categories:

    (i)    <u>Food Production</u>
Cleaning chemicals and detergents, cleaning utensils, disposable items, flatware, hollowware, loose food storage containers and garbage containers, pans, pots, trays and kitchen utensils.

    (ii)    <u>Food and Beverage Service</u>
Chinaware, glassware, flatware, hollowware, utensils, paper cups/ napkins/ placemats and other disposable items.

    (iii)    <u>Housekeeping</u>
Uniforms (including name tags), linen, towels, toilet paper, chemicals, sanitary bags, cloth hangers and other disposable items including cabin amenities.

For the avoidance of doubt, catering materials refer to any single item costing less than US$10 and/or with usable life shorter than one (1) year. Other items will be considered ship's equipment and will be for the

account of the Principal. This may include items such as vacuum cleaners, trolleys, bar mixing machines, etc.

The Caterer will ensure that its Catering Crew are briefed and trained to use and clean the equipment and facilities made available by the Principal to undertake the services. The Caterer will use its best endeavors to implement measures to ensure that the equipment and facilities provided and maintained by the Principal are not damaged intentionally or misused by the Caterer's Crew.

## 4. OBLIGATIONS OF THE PRINCIPAL

(a) Provide initial stock of all required catering materials as mutually agreed through the owner and supervised by the Principal. The stock take over value will serve as basis for settlement purposes upon termination of this Agreement.

(b) Supply the Vessel occupancy forecasts and promptly advise the Caterer in writing of sudden changes of occupancy levels.

(c) The Principal will appoint an onboard representative who will have the authority to approve invoices for items outside the standard commercial terms submitted by the Caterer related to this Agreement.

(d) Provide and ensure the maintenance of all necessary equipment and facilities required by the Caterer for the proper execution of the services to be provided by the Caterer and in particular as outlined below:

    (i) Food production and storage
        1. Maintenance and upkeep of food production facilities and plant
        2. Maintenance and upkeep of storage facilities and plant
        3. Supply and installation of spares for equipment

Equipment is defined as any single piece of electrical, electronic, mechanical or manual device, whether fixed or movable.

Spares for equipment refer to any non-consumable, durable spare part that requires replacement in order for a particular piece of equipment to function as prescribed by the manufacturer.

    (ii) Food and Beverage Service Facilities
        Curtains, drapery, furniture (including open deck), lamps and lampshades, carpet, maintenance and upkeep of service facilities and plant, maintenance of other equipment and provision of spares.

        Equipment is defined as any single piece of electrical, electronic, mechanical or manual device, whether fixed or movable.

Spares for equipment refer to any non-consumable, durable spare part that requires replacement in order for a particular piece of equipment to function as prescribed by the manufacturer.

(iii)     Housekeeping Facilities
Curtains, drapery, furniture (including open deck), lamps and lampshades, carpet, mattresses, bedspreads, laundry facilities, pantries, maintenance of other equipment and provision of spares.

Equipment is defined as any single piece of substantial electrical, electronic, mechanical or manual device, whether fixed or movable.

Spares for equipment refer to any non-consumable, durable spare part that requires replacement in order for a particular piece of equipment to function as prescribed by the manufacturer.

(iv)     Communication, Office Equipment and IT Systems
Provide reasonable e-mail and telephone communication necessary for Caterer's business use only and subject to approval by Principal. Office equipment such as computers, printers, copiers, as well as office supplies (excluding paper for menus, wine and bar lists which will be supplied by Caterer). The cost of hotel IT system including hardware, software and maintenance for points of sale system and property management system is the responsibility of the party listed in **ANNEX V.**

## 5.     ADDITIONAL CHARGES

(a)     Temporary Adjustment of Commercial Terms
Upon a *Force Majeure Event* (as defined in Clause 15), or in case the Caterer is obliged to procure provision or catering material at unusually high cost in addition to the remedies set forth in Clause 15, the party whose performance is materially and adversely affected by such event (the "Affected Party") will notify the other party and the parties may agree to increase (if the Caterer is the Affected Party) or decrease (if the Principal is the Affected Party) the commercial terms set forth in Clause 2, for a reasonable period of time not to exceed the conclusion of the *Force Majeure Event*. Such an increase or decrease in commercial terms will under no circumstances exceed 25%.

(b)     Gratuities
Gratuities such as gifts to officials (i.e. cigarettes and liquor) will be included in the monthly invoice supported by vouchers signed by the Master and a representative designated by the Principal.

(c)     Sales Tax
In the event the Vessel would be subject to local sales taxes for purchases of provisions and catering materials, this amount will be the sole responsibility of the Caterer and shall be included in the commercial terms and the rates per

passenger set forth in Clause 2 herein, any new itineraries not planned as per **ANNEX I**, then such taxes if any shall be for the account of the Principal.

(d) <u>Outbreaks and Pest Control</u>
In the event of outbreaks such as Norovirus on board the Vessel, the Caterer shall work with the Principal to mitigate such incident and cost associated in connection therewith. This may include procuring special chemicals; engage consultants and use onboard crew for extra duties out of the scope of their daily work. Regular and ongoing pest control and associated provision of equipment and chemicals for daily use should be borne by Caterer.

The pest control management is the responsibility of the Deck Department. Engagement of third party to monitor and implement system as well as provision of equipment and chemicals is borne by the Principal.

(e) <u>Special Items</u>
Subject to advanced written approval from Principal, the Caterer may procure special items requested by Principal. The cost for procurement of such items will be borne by the Principal. This may include special food items normally not carried onboard, special equipment that may be requested from time to time or employing additional personnel such as Doctor and Musician.

(f) <u>Pre-operating Costs</u>
The Caterer shall submit to Principal a separate budget proposal for pre-operating costs to cover the cost of the personnel, travel and out of pocket expenses of the Caterer related to the startup of the operation, such costs to be the responsibility of the Principal (the "Pre-operating Costs"). Upon receipt of this proposal, Principal shall review the proposal and may, at its discretion, approve the proposal and the costs set forth therein. In the event that the Principal does not approve the proposal, the parties shall, in good faith, attempt to reasonably and mutually agree upon a budget for such Pre-operating Costs. Once finalized and approved by Principal or agreed to by the parties pursuant to the terms herein, this Agreement shall be amended to include and affix the approved Pre-operating Costs as **ANNEX IV.**

6. **INVOICING AND PAYMENT TERMS**

(a) The invoice cycle per operating month is split in two sets of activities. The first activity is a standard invoice based on guaranteed rate as per Clause 2. This invoice to be paid in advance of the thirty (30) day period.

The second activity covers eventual adjustments as well as any extra meals served and other adjustments made. This invoice/credit note will be submitted no later than ten (10) working days after the end of the charter period.

(b) In the event that this Agreement is terminated by the Principal, for any reason other than a material breach by the Caterer, prior to the termination date referred to in Clause 10, the Principal shall pay to the Caterer on demand severance costs

(meaning the costs which are required in law to be paid to the Catering Crew as a result of the early termination of contracts for service onboard the Vessel) together with repatriation costs and expenses. The employment terms of the Caterer's Crew depend on POEA regulations and collective bargaining agreements with ITF that are negotiated from time to time. The Caterer's Crew will be entitled to one (1) week pay from the date of termination as well as free repatriation.

7.   **REDELIVERY TERMS AND CONDITIONS**

   (a)   The Caterer will return to the Principal all catering materials as specified in the "Initial Inventory" upon termination of this Agreement.

   (b)   The Principal agrees to take over the stock of unused provisions at the end of this Agreement at Caterer's book value, provided that the value does not exceed the amount as per **ANNEX IV** and that the provisions are within expiration dates as follows:

| Provision type | Expiry date not before |
|---|---|
| Frozen meat, fish and poultry | 60 days |
| Dry goods | 90 days |
| Dairy items | 7 days |
| Fresh fruit and vegetables | 7 days |
| Other perishable items | 14 days |

8.   CATERING CREW

   (a)   The Caterer shall employ all Catering Crew. The Caterer shall be responsible for payroll and all related costs and expenses.

   (b)   The Catering Crew will have sufficient English skills and to able comply with SOLAS 1997 requirements as amended. All Catering Crew will be in possession of valid pre-employment medical examinations, valid travel documents, required by the Vessels flag including Seaman's Book, travel visas and Basic Safety Course covering: Personal Survival Techniques, Fire Prevention and Fire Fighting, Elementary First Aid and Personal Safety & Social Responsibility.

   (c)   The Caterer shall manage the Catering Crew and allocate job responsibilities in order to carry out the Catering Services onboard the Vessel in accordance with applicable legislation, collective bargaining agreements, Principal requirements and supervision of the Master.

   (d)   War risk trading areas

      Any extra costs as a result of Vessel operating in war trading areas as determined by the POEA will be for the account of the Principal.

(f)     Insurance
The Principal warrants that the Vessel will be entered with a protection and indemnity association affording full cover for crew claims of any kind whatsoever and shall provide the Caterer with written evidence thereof within seven (7) days of the commencement date thereof.  For the avoidance of doubt, the Catering Crew are to be treated as crew for the purposes of protection and indemnity insurance and the Principal shall procure that the P&I insurance names the Caterer as Catering Manager with the benefit of full cover and waiver of subrogation and shall provide written evidence thereof at the request of the Caterer.  As between the Principal and the Caterer, the Caterer shall not be responsible for paying any premiums or calls arising in connection with such insurances.  The Principal will cover the cost of any deductible payments.

## 9.     QUALITY MANAGEMENT

The Caterer shall provide the services hereunder in accordance with the quality control standards requested by the Principal, 4 star-plus and customarily done on cruise vessels and as described in **ANNEX II**

## 10.    COMMENCEMENT AND TERMINATION

(a)     The appointment of the Caterer shall be deemed to have commenced on the date described in **ANNEX I** and continue for Five (5) years unless or until terminated as provided herein with an annual increase of 3(%) percent.

(b)     Unless otherwise provided herein, neither party may terminate this Agreement prior to the date as described in **ANNEX I** following which date either party shall be entitled to terminate this Agreement with Ninety (90) days written notice to the other party.

(c)     In the event of a failure by either party materially to comply with any part of this Agreement (including, without prejudice to the generality of the foregoing, any failure by the Principal to pay owed sums requested by the Caterer), such default shall be notified in writing to the other party and if not remedied within seven (7) days, the party not in default may terminate this Agreement with immediate effect by notice in writing.

(d)     If agreement on any temporary surcharge (See Clause 5(a)) is not reached, the Caterer may terminate this Agreement with fourteen (14) days written notice.

(e)     Termination of this Agreement shall be without prejudice to any rights of the parties accrued prior to the date of termination.

## 11.    FREIGHT, STEVEDORING AND PORT COSTS

(a)     The Caterer will arrange for provisions FAS (Freight Along Side).  If due to operational restrictions, the crew is not allowed to load the Vessel, the Principal

Principal's Initials                                  7                      Caterer's Initials

will be responsible for payment or arranging free of charge any additional freight and/or labor costs such as barge, use of crane or stevedoring as required.

(b)   Port costs including but not limited to garbage disposal, stevedoring, forklifts, cranes, barges, water, etc. are for the account of the Principal.

## 12.   STOCK

(a)   <u>Damages and Loss of Stock</u>
The Principal shall be solely responsible for and shall bear all and any losses and costs associated with any loss or damage to food or beverage provisions and catering materials arising howsoever other than as a result of the sole negligence, gross negligence or willful default of the Caterer including, without prejudice to the generality of the foregoing, as a result of Vessel's breakdown, rough sea, malfunction of store and galley equipment, excessive humidity or insufficient aeration of storage rooms. The Principal shall be responsible in any event for any loss of or damage to provisions arising as a result of accidents involving the Vessel or seizure of the Vessel.

(b)   Any lost, condemned or damaged goods will be valued at the Caterer's book value.

(c)   The Principal shall be solely responsible for insuring any provisions and catering materials, under Vessel's regular insurances.

## 13.   LIABILITY

(a)   Neither party shall be under any liability for any failure to perform any of their obligations hereunder by reason of any cause beyond their reasonable control.

(b)   Neither party shall be liable for any indirect, special, incidental, punitive or consequential damages whatsoever and howsoever arising in the course of this Agreement.

(c)   Except for liabilities arising solely from the gross negligence or willful misconduct of such party, a party's aggregate liability, if any, arising out of or in any way related to its performance of the services provided for under this Agreement shall be limited to the sum of US$100,000; and in no event shall a party pay for incidental, indirect, special, or consequential damages, even if they have been advised of or should have foreseen, the possibility of such damages.

(d)   Subject to the limitation set forth in Clause (c), the Principal hereby undertakes to indemnify and keep the Caterer harmless against claims connected with the performance of this agreement and expenses (including legal costs) which the Caterer will suffer or incur, provided that same shall not have resulted from the breach of this agreement by the Caterer or the gross negligence of willful misconduct of the Caterer, and on the condition that the Caterer shall promptly notify the Principal when it becomes aware of any such claim and the principal

Principal's Initials           8          Caterer's Initials

shall be entitled to assume conduct of the claim and the Caterer shall fully and in all respects co-operate with the principal in connection therewith.

(e)   Subject to the limitations set forth in Clause (c), the Caterer hereby undertakes to indemnify and keep the Principal harmless against claims connected with the performance of this Agreement and expenses (including legal costs) which the Principal will suffer or incur provided that same shall not have resulted from the breach of this Agreement by the Principal or the gross negligence or willful misconduct of the Principal, and on the condition that the Principal shall promptly notify the Caterer when it becomes aware of any such claim and the Caterer shall be entitled to assume conduct of the claim and the Principal shall fully and in all respects co-operate with the Caterer in connection therewith.

(f)   The provisions of this Clause 13 shall remain in force notwithstanding termination of this Agreement.

## 14.   CONFIDENTIALITY

The parties shall keep the terms and conditions contained in this Agreement and the other party's business practices confidential at all times, even after the termination of this Agreement.

## 15.   FORCE MAJEURE

Neither party shall be liable to the other for the failure or delay in complying with its obligations under this Agreement to the extent that such failure or delay is caused by circumstances which could not be anticipated and which fall wholly outside that party's control (including but not limited to war, riot, material currency fluctuations, public disorder, civil disturbance, act of God, natural disaster or strike action within the Vessel's area of operation) (a "*Force Majeure Event*), provided that:

(a)   such party shall take all necessary steps to minimize the effect of such *Force Majeure Event* on the other party;

(b)   such party shall give the other party timely notice of the occurrence of a *Force Majeure Event* specifying the occurrence, the performance affected and the date, if any, at which it anticipates that its performance can be reestablished; and

(c)   the other party shall be entitled to terminate this Agreement upon a *Force Majeure Event* continuing or anticipated to prevent such party's timely compliance with its obligations for a continuous period of more than thirty (30) days.

## 16.   LAW

(a)   This Agreement shall be construed and interpreted in accordance with the laws of the State of Florida, USA.

Principal's Initials                          9                    Caterer's Initials

(b)     Any dispute or difference arising between the parties to this Agreement concerning its construction, meaning or intention, shall be referred to a single arbitrator, or, in default of agreement, by appointee of the American Arbitration Association, and such dispute shall be settled by arbitration pursuant to the rules and jurisdiction of the American Arbitration Association, the findings of which shall be binding on both parties.  All formal hearings and proceedings shall be held in Miami unless otherwise agreed to by both parties.

## 17.   AMENDMENTS AND MODIFICATIONS

This Agreement constitutes the entire agreement between the parties and may be modified, altered, or amended only in writing and signed by both of the parties hereto.

## 18.   NOTICES

All demands made, or notices given, in accordance with the provisions of this Agreement shall be made or given by facsimile or registered mail to the addresses below, or to such changed address as may be notified in writing by one party to the others and shall be effective from the date of receipt.  Demands or notices by facsimile shall be deemed to have been received on the date of dispatch if sent in the business hours of the addressee (and if not, on the following business day) and in the case of registered mail, forty-eight (48) hours after the date of dispatch.

a)   To Principal:     Haimark, Line Ltd.
                       1536 Cole Boulevard, Suite 333
                       Lakewood, CO 80401
                       Attention:      Marcus Leskovar
                       Telephone:      (800)798-4223 Ext. 571/970-485-0735
                       Telefax:        (303) 436-2459
                       E-mail:         marcus@haimarktravel.com

     To Caterer:       FLEETPRO LEISURE LTD
                       C/O Fleetpro Ocean Inc.
                       4770 Biscayne Blvd. PH A
                       Miami, Fl. 33137
                       Attention:      Hans Rood
                                       Dietmar Wertanzl
                       Telephone:      (305) 573-6355
                       Telefax:        (305) 573-5177
                       E-mail:         Hans.Rood@fleetpro-psm.com
                                       Dietmar.Wertanzl@fleetpro-psm.com

## 19.   ASSIGNMENT

Principal's Initials              10           Caterer's Initials

Neither party shall have the right to assign any or all of its right, title or interest in, to or under this Agreement, without the prior written consent of the other party.

## 20.    REPRESENTATION AND WARRANTY

Each party hereby represents and warrants that, as of the date of this Agreement, it is a corporation duly organized, validly existing and in good standing under the laws of the state in which it is incorporated, is in good standing and duly qualified to transact business under the laws of such state, has all requisite authority to conduct its business as presently conducted or proposed to be conducted under this Agreement; and the person or persons executing this Agreement on its behalf has been duly authorized to do so by all requisite corporate action.

IN WITNESS WHEREOF, HAIMARK, Ltd. and FLEETPRO Inc. have executed the Agreement this day and year first above written.

**For and on behalf of**
**Principal**
**Haimark, Line Ltd.**


By: _____

Its: _____

**For and on behalf of**
**Caterer**
**Fleetpro Ocean, Inc.**


By: _____

Its: _____

## ANNEX I
### M/V Sea Voyager (TBR M.S. Saint Laurent)

### The Vessel

I. **VESSEL DETAILS**

    a. Vessel Name:    *M/V SEA VOYAGER*
    b. Vessel Type:     Cruise Ship
    c. Vessel IMO No:  9213129
    d. Ship's Capacity  294 person (Pax & Crew)
    e. Ship's Manning:

        i. Estimated number of Deck/Engine Crew:   24
        ii. Estimated Catering Crew             55
        **TOTAL**                       **<u>79</u>**

II. **VESSEL TRADING AREAS**

    American and Canadian Great Lakes Area-Caribbean Sea Region

III. **REVIEW DATE**

    N/A

IV. **EARLIEST TERMINATION DATE**

This Agreement will commence May 1, 2015 and will continue for Five (5) years.

ANNEX II
M/S Sea Voyager (TBR M.S. Saint Laurent)

**Hotel and Catering Services Standard Shall be Open Sitting For all Meals**

**I.    CATERING**

(a)    **Early Riser**
The following will be available from 06:30 to 07:30 or 08:00 hours, depending upon the start of breakfast:

- ❖    Coffee and tea
- ❖    Fruit Juice
- ❖    Croissants and Danish Pastry

(b)    **Breakfast**
Shall be open sitting, times will be posted daily in the program and service will be on a first come first served basis.  Alternative buffet will be available in the Lighthouse Keepers Bar.

*Continental Breakfast Buffet will consist of:*

- ❖    Coffee and a selection of different types of tea
- ❖    A variety of Fruit Juices and Milk
- ❖    Brown, white, whole wheat and crisp bread, toast and pastries
- ❖    Fruit salad, stewed fruit and fresh fruit in season
- ❖    Honey, jam, marmalade, butter, margarine, muesli and cereals

*The Dining Room Breakfast menu will consist of:*

- ❖    Coffee and a selection of different types of tea
- ❖    A variety of Fruit Juices and Milk
- ❖    Brown, white, whole wheat and crisp bread, toast and pastries
- ❖    Fruit salad, stewed fruit and fresh fruit in season
- ❖    Honey, jam, marmalade, butter, margarine, muesli and cereals
- ❖    Fried, scrambled and boiled eggs, porridge, fried bacon and link sausages and pancakes
- ❖    Smoked/cured fish, cold cuts, smoked sausage, liver sausage and similar items  (varied everyday)
- ❖    Cheese (varied everyday)
- ❖    For Diabetics: Margarine and Jam
- ❖    A daily "special" warm dish

(c)    **Mid-morning Consommé**
Guest staying onboard during the morning will be offered a consommé at 1030 hours depending upon the daily program.

(d) **Lunch**
Shall be of open sitting, the times will be established on a daily basis and published in the program for the day. Alternative buffet will be available in the Lighthouse Keepers Bar.

*The Lunch will consist of:*
- ❖ Bread and butter
- ❖ Salads and assorted sandwich with dressing and condiments
- ❖ Cold Cuts-Assorted cheeses
- ❖ One Appetizer
- ❖ One Soup
- ❖ Two Entrées --*Meat, Fish*
- ❖ One Pasta --Entrée
- ❖ One Vegetarian – Entrée
- ❖ Two Desserts
- ❖ Ice-Cream/ Sorbet – *different varieties daily*
- ❖ Coffee and tea

(e) **Afternoon Tea**
Will be arranged on an individual time basis to reflect guest onboard and consist of:
- ❖ Cakes/ Cookies
- ❖ Sandwiches
- ❖ Coffee and tea
- ❖ Coffee and tea will be available in lounge area from 6 Am – 12: Midnight

(f) **Cocktail Hour**
Cold canapés and bar snacks will be served for one hour before dinner.
Hot & Cold Hors d' Oeuvres will be served at the welcome and farewell party

(g) **Dinner**
Shall be open sitting, the times will be established on a daily basis and published in the program for the day on a first come first served basis. Alternative buffet will be available in the Lighthouse Keepers Bar.

*The Dinner Menu will consist of:*
- ❖ Bread and butter
- ❖ Two Appetizers
- ❖ Two Soups
- ❖ Two Salads
- ❖ Two Entrées --*Meat, Fish*
- ❖ One Pasta –Entrée
- ❖ One Vegetarian – Entrée
- ❖ Two Desserts
- ❖ One Ice-Cream/ Sorbet – *different varieties daily*
- ❖ Cheese Platter-Different varieties daily
- ❖ Fresh Fruit in season
- ❖ Coffee and tea

Principal's Initials [signature]          14          Caterer's Initials [   ]

During regular cruise rotations of seven days and more, two Gala Dinners (Welcome and Farewell) of five courses will be offered.

(h) **Midnight Snack**
A small snack will be served at 23:00 hours.

(i) **Room Service**
Room service will be available on a daily basis for continental breakfast, also an in suite menu of limited choices will served during times when regular food services are not available.

## II. CABIN SET-UP AND LAUNDRY SERVICES FOR GUESTS

(a) **Set-up**
The following cabin standards will be monitored daily:

- ❖ One towel each (bath, hand and face) per person which are changed daily or otherwise at the request of the guest
- ❖ Full set-up of cabin amenities*(Soap, Shampoo, conditioner, body lotion)*
- ❖ Toothbrush holder, toilet paper and facial tissues
- ❖ Information folder
- ❖ Pillow Menu to be placed in cabin
- ❖ Bottle of water
- ❖ For the Owner's suites mini bar to be fully stocked and fruit basket replenished during the cruise
- ❖ The cabin amenities shall be L' Occitane brand

(b) **Complimentary Beverage Services**
- ❖ Captain's Welcome Cocktail Reception (sparkling wine; non-alcoholic beverages)
- ❖ Captain's Farewell Cocktail Reception (sparkling wine; non-alcoholic beverages)
- ❖ Embarkation Reception (Fruit juice or punch)
- ❖ Fruit juice/punch to be served to all Guests at the gangway or deck upon return from shore excursion

(c) **Beverage Prices and Discounts**
As agreed hereto, the Cater shall make available to the Principal different All inclusive drink packages for choice, as listed on **ANNEX V**. Prior to publication, Caterer shall obtain the consent and approval of the Principal, not to be unreasonably withheld of the sale prices for onboard beverages (bar and wine list); open bar packages and proposed amendments thereto.

Caterer shall grant a discount of fifty percent (50%) against the published prices to:

Principal's Initials           15          Caterer's Initials

(i)   Principal's staff and other contract personnel engaged by the Principal in connection with the cruise programme, e.g. guest lecturers, entertainment personnel and the like for personal consumption only;

(ii)   Principal when hosting promotional functions onboard.

(d)   **Exclusion**

No exclusion as per clause 3 (c)

<u>ANNEX III</u>
M/S Sea Voyager (TBR M.S Saint Laurent)

<u>CREW</u>

I.    <u>The Catering Crew</u>

| DEPARTMENT | POSITION | Crew | NUMBER |
|---|---|---|---|
| PURSER | Hotel Manager | Caterer | 1 |
| | Chief Purser | Caterer | 1 |
| | Controller | Caterer | 1 |
| | Receptionist | Caterer | 2 |
| STEWARD | Head Steward | Caterer | 1 |
| | Cabin Steward/ess | Caterer | 8 |
| | Hotel Cleaner | Caterer | 3 |
| | Laundryman | Caterer | 2 |
| GALLEY | Executive Chef | Caterer | 1 |
| | Sous Chef | Caterer | 1 |
| | Chef D' Partie | Caterer | 1 |
| | Assistant Chef D' Partie | Caterer | 4 |
| | Commis D' Cuisine | Caterer | 2 |
| | Kitchen Utilities | Caterer | 5 |
| DINING ROOM | Maitre'D | Caterer | 1 |
| | Dining Room Steward | Caterer | 14 |
| BAR | Head Bartender | Caterer | 1 |
| | Bartender | Caterer | 6 |
| TOTAL CATERING CREW | | | 55 |

## ANNEX IV
### M/S Sea Voyager (TBR M.S. Saint Laurent)

### Pre-operating Cost

All Pre-Operating expenses included.



## ANNEX V
### M/V Sea Voyager (TBR M.S. Saint Laurent)

### Commercial Terms

a) **Passenger Rate per day per passenger**

| | | |
|---|---|---|
| (i) | Total Passenger 220-Minimum 176 or 80 (%) Per day (For (i) except during dry docks in which Case the Guaranteed Rate will be in force.) | **US$ 57.50** |
| (ii) | Embarkation Dinner start of season | **US$ 25.00** |
| (iii) | Debarkation Breakfast end of season | **US$  7.50** |
| (iv) | Gratuity per day /per passenger (Suggested) | **US$ 12.50** |

b) **Guaranteed Rate per day without passengers** **US$ 4,586.00**
   **To be paid to Caterer during this Agreement.**

c) **Principal Staff per day/per person** **US$ 32.50**

d) **Extra Meals**

| | | |
|---|---|---|
| (i) | Breakfast - | $  7.50 |
| (ii) | Lunch     - | $ 12.50 |
| (iii) | Dinner    - | $ 25.00 |

e) **All inclusive house pouring brands only, wine, beers, soft drinks and water, will be offered to all Guests throughout the voyage on selective cruises, for an additional charge of US$ 4.50 P.P.D., and the cost shall be borne by the Principal.**

f) **Beer, wine and soft drinks will be offered during Lunch and Dinner at no cost, pricing is included in the daily rate, on selective cruises as described by the principal.**

g) **All onboard revenues are for the account of the Caterer, with the exception of Communication, and Shore Excursions sold onboard.**

h) **The cost of hotel IT system including hardware and software for points of sale system and property management system are for the account of the Caterer.**

i) **The total value of the unused provision at the time of take over shall not exceed the amount of USDS 100,000.00.**

j)   The Agreement do not includes the provision of Cruise nor entertainment staff, these shall be for the account of the principal or as agreed.

k)   The Caterer will extend a Fifty Percent (50 %) discount to principal staff for all laundry services.

Principal's Initials                    20          Caterer's Initials