## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE: )
) Case No. 15-22180-JGR
HAIMARK LINE, LTD. ) Chapter 11
)
Debtor. )
)
CLIPPER CRUISES LTD. )
)
          Movant, )
v. )
)
HAIMARK LINE, LTD., Debtor )
)
          Respondent. )

## OPPOSITION TO DEBTOR'S MOTION TO RECONSIDER, IN PART, ORDER LIFTING AUTOMATIC STAY TO ALLOW CONTINUATION OF ARBITRATION PROCEDING AND OTHER RELIEF

Clipper Cruises Ltd. ("Clipper"), files this opposition ("Opposition") to *Debtor's Motion to Reconsider, in part, Order Lifting Automatic Stay to Allow Continuation of Arbitration Proceeding and Other Relief* [Dkt. No. 236] ("Reconsideration Motion"), and in support of this Opposition states as follows:

## I. RELEVANT BACKGROUND[1]

1. On February 2, 2016, and without approval or authorization from this Court, Haimark Line, Ltd. ("Debtor" or "Haimark") commenced the Arrest Action against Clipper and the Ship in the United States District Court for the Middle District of Florida, Jacksonville Division ("Florida Court"). By its Verified Complaint commencing the Arrest Action, Haimark sought, among other things, security for its alleged claim(s) against Clipper pursuant to the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed such terms in the *Motion for Relief from Automatic Stay by Clipper Cruises Ltd. to Continue Arbitration of Disputes with the Debtor* [Dkt. No. 175] ("Stay Relief Motion").

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Admiralty Rules"):

Case 3:16-cv-00107-MMH-JRK   Document 1   Filed 02/02/16   Page 3 of 7 PageID 3

> 7.    By and pursuant to the terms and conditions of said charter party agreement, Clipper at all times material to this action was required to provide and maintain a seaworthy vessel, including a competent captain and crew, who were "solely responsible" (on behalf of owners), for the management, handling, safety and navigation of the vessel and to provide and maintain a vessel with all the equipment and systems on board in good of functioning order.
>
> 8.    The Plaintiff has performed all those things required on its part to be performed under said charter party agreement to maintain this action.
>
> 9.    Plaintiff pursuant to the provisions of Rule E(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure request security for its claim against the Defendants, which is the subject of an arbitration between Plaintiff and Clipper pursuant to the provisions of Clause 22 of the aforementioned written charter party agreement and to obtain jurisdiction over the Defendants for enforcement purposes.

Florida Court Docket at Docket No. 1, paragraph 9.

2.    Immediately upon the commencement of the Arrest Action by Haimark, the Florida Court issued the *Order Directing the Issuance Warrant of Arrest in Rem and/or Summons* ("Arrest Order").  *See* Florida Court Docket at Docket No. 7.  As a result of the Arrest Order, the Ship was and remains arrested in the Port of Jacksonville.

3.    On February 22, 2016, Clipper filed the Stay Relief Motion requesting entry of an order lifting the automatic stay to allow Clipper to, among other things, defend itself and the Ship against the claims asserted by Haimark in the Arrest Action and to take any other necessary and appropriate actions required therein.

4.     Subsequent thereto, the Debtor filed papers to interpose a limited objection to the Stay Relief Motion [Dkt. No. 198] ("Stay Relief Objection") and to respond [Dkt. No. 213] ("Response in Opposition" and together, with the Stay Relief Objection, "Haimark Papers") to *Memorandum of Law of Clipper Cruises Ltd. in Support of Motion for Relief from Automatic Stay to Allow Continuation of Arbitration Proceeding, Arrest Action and Other Relief* [Dkt. No. 210] ("Clipper Stay Relief Memo").

5.     On March 15, 2016, this Court conducted a preliminary hearing on the matter, therein receiving offers of proof from counsel and hearing argument on the Stay Relief Motion. The next day, March 16, 2016, this Court (a) issued a ruling granting the Stay Relief Motion ("Stay Relief Opinion"), (b) entered the *Order Lifting Automatic Stay to Allow Continuation of Arbitration Proceeding and Other Relief* [Dkt. No. 217] ("Stay Relief Order") and (c) entered a judgment [Dkt No. 218] allowing Clipper to, among other things, defend itself and assert counterclaims and other rights in the Arrest Action, including the right to assert claims seeking counter-security:

IT IS HEREBY ORDERED THAT:

1.     The Motion is granted;

2.     Clipper Cruises Ltd. ("Clipper") is hereby granted relief from the automatic stay, and this stay arising under 11 U.S.C. § 362(a) is hereby lifted to allow Clipper to:

(i) defend, assert and prosecute claims and counterclaims, and otherwise assert all other rights in an arbitration proceeding filed against Clipper by Haimark Line, Ltd. ("Debtor") as required by the provisions of a binding arbitration agreement between the parties; and (ii) defend itself and assert claims, defenses, counter claims and other rights in an Arrest Action commenced by the Debtor against Clipper; including without limitation to assert claims seeking counter-security; and

Stay Relief Order, at paragraph 2.

6.      On March 25, 2016, Haimark filed a motion in the Florida Court seeking an interlocutory sale of the Ship pursuant to the Admiralty Rules ("Haimark Sale Motion").  *See* Haimark Sale Motion attached hereto as **Exhibit A.**

7.      On March 30, 2016, with the merits of each of the arbitration Debtor commenced in New York ("Arbitration"), the Arrest Action, and the Haimark Sale Motion still to be determined and pending in other jurisdictions, the Debtor filed the Reconsideration Motion, which disingenuously seeks reconsideration of the Stay Relief Order without providing a legal basis for doing so, simply stating that this Court's ruling reflects "clear error" supporting reconsideration under Fed. R. Civ. P. 9023.

## II.  <u>STANDARD OF REVIEW</u>

8.      Neither the Federal Rules of Civil Procedure nor the Bankruptcy Rules recognize a motion for reconsideration.  *Dimeff v. Good (In re Good)*, 281 B.R. 689, 699 (10th Cir. BAP 2002).  When filed, however, motions for "reconsideration" of a judgment should be treated as motions to alter or amend judgment under Fed. R. Civ. P. 59(e), made applicable to bankruptcy by Fed R. Bankr. P. 9023.  Under those rules, such motions will only be granted if there has been a mistake of law or fact or there is newly discovered evidence not previously available.  *In re Bushman*, 311 B.R. 91, 95 n.5 (Bankr. D. Utah 2004).  Relief may also be available under Fed. R. Civ. P. 59(e) if there has been an intervening change in the controlling law.  *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994).  A motion to reconsider, made pursuant to Fed. R. Bankr. P. 9023 and Fed. R. Civ. P. 59(e), is proper only when the court has "made a mistake not of reasoning but of apprehension ... [or] if there has been a significant change or development in the law or facts since submission." *In re Zamora,* 251 B.R. 591, 595 (D. Colo. 2000) (citing *Federal Deposit Ins. Corp. v. Hildebrandi,* 892 F. Supp. 1317, 1319–20

(D. Colo. 1995)).  The motion to reconsider must demonstrate the "reason why the court should reconsider its prior decision" and "must set forth facts or law of a strongly convincing nature" to induce the court to reverse its earlier decision.  *Dale & Selby Superette & Deli v. U.S. Dept. of Agriculture*, 838 F. Supp. 1346, 1347 (D. Minn. 1993) (citation omitted).  A party cannot use a Fed. R. Civ. P. 59(e) motion to cure its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented originally to the court.  *Aybar v. Crispin-Reyes*, 118 F. 3d 10, 16 (1st Cir. 1997), *cert. denied*, 522 U.S. 1078 (1998).

### III.  ARGUMENT

9.      By the Reconsideration Motion, the Debtor seeks reconsideration of "one specific provision in the [Stay Relief] Order – that [provision] permitting [Clipper] 'to assert claims seeking counter-security'" in the Florida Court on the purported basis that the Stay Relief Order reflects both this Court's fundamental misapprehension of (a) the concept of counter-security and (b) Clipper's request.  Neither statement is true because (a) this Court understood and expressly ruled with respect to the practical effect of granting Clipper relief from the automatic stay to seek counter-security, and (b) this Court's limited ruling does not (and should not) allow for a consideration of the underlying merits of the Arrest Action.

10.      Importantly, the Debtor's request for reconsideration presents no facts or law, let alone facts or law of a "strongly convincing" nature, to upset this Court's Stay Relief Opinion or the Stay Relief Order.  The Reconsideration Motion simply rehashes arguments already made to this Court, repeatedly attempts to argue the merits of why Clipper's request for counter-security is inappropriate (an issue that is not before this Court), and selectively quotes from this Court's Stay Relief Opinion, resulting in a skewed interpretation of the well-reasoned result.  Simply, the

Debtor can only blame itself for being subject to the Admiralty Rules, which permit Clipper to seek counter-security for its counterclaims in the Arrest Action.

11.     The Debtor made a tactical decision to pursue Clipper outside of this Court by initiating the Arrest Action post-petition.  That decision comes with consequences - one of which is Clipper's right under maritime law and the Admiralty Rules to seek counter-security for its counterclaims in the Arrest Action.  The Debtor cannot now, on one hand, gain all of the benefits under the Admiralty Rules by arresting and possibly selling the Ship and, on the other hand, use this Court to shield itself (by circumscription of Clipper's rights) from the Admiralty Rules that prove disadvantageous to the Debtor.  Whether counter-security is appropriate and in what amount are not issues properly before this Court.  The Debtor will have an opportunity to make all of its arguments before the Florida Court.  Here, however, this Court's Stay Relief Opinion and Stay Relief Order already considered the issues raised in the Reconsideration Motion, and, therefore, it should be denied.

**A.      This Court Understood the Practical Effect of Allowing Clipper to Request Counter-security in the Arrest Action.**

11.     The Debtor appears to argue that this Court misconstrued or simply misunderstood the basis of Clipper's request for counter-security or the practical effect of same by reference to this Court's statement that Clipper doesn't seek "to alter or affect or elevate [its damages and administrative expense claims] into any kind of a secured claim." Reconsideration Motion, ¶ 2.  The Debtor, however, ignores the very next paragraph and, in fact, the next several paragraphs of this Court's Stay Relief Opinion in which this Court explains why the practical result of the post-petition Arrest Action, commenced in the Debtor's business judgment (even if it somehow converts some sort of unsecured claim to a secured claim), cannot unfairly cut off Clipper's rights to defend itself in any manner provided by law:

```
16          Even if it's found somehow that by allowing the stay
17     to be lifted to allow the request for counter-security to be
18     made and counter-security to be ultimately ordered, even if
19     somehow that does convert some sort of unsecured claim to a
20     secured claim, the Court finds that it's difficult for the
21     debtor to make that argument when the pursuit of the Florida
22     State Court litigation was due to its own business judgment.
23          The debtor initiated the action.  And in this Court's
24     view, it's unfair to cut off Clipper's rights to defend itself
25     in any manner provided by law, especially when the asset seized
```

```
                    Haimark Line, Ltd.                    14

1     is a four-million-dollar vessel.
```

*Transcript of March 16, 2016 Oral Ruling Regarding Motion for Relief From Automatic Stay Filed by Clipper Cruises Ltd.* [Dkt.  No. 220] ("Opinion Transcript"), 13:16 – 14:1, attached hereto as **Exhibit B**.

12.     This Court then goes on for several paragraphs, citing to various cases to support the proposition that a debtor cannot prevent someone it sues in a post-petition action from protecting its legal rights and that the automatic stay should not tie the hands of a defendant while a plaintiff debtor is given free rein to litigate.  *Id.* 14:2 – 15-9, *citing In re Merrick*, 175 B.R. 333 (9th BAP 1994) and *In re Martin-Trigona*, 892 F. 2d 575, 577 (7th Cir. 1989) ("There is, in contrast, no policy of preventing persons whom the bankrupt has sued from protecting their legal rights.").

13.     This Court clearly understood the practical consequences of allowing Clipper to pursue counter-security.  This Court viewed this result as self-imposed by the Debtor, noting that

the Debtor exercised its business judgment in initiating the Arrest Action knowing the Admiralty Rules would be invoked and thereby allowing Clipper to assert counterclaims and seek counter-security.  *See Opinion Transcript*, 13:18-22.  Accordingly, this Court's Stay Relief Opinion and the Stay Relief Order are not based on a mistake of law or fact and the Reconsideration Motion should be denied.

**B.     The Reconsideration Motion Improperly Argues the Merits of the Debtor's Claims against Clipper.**

14.     The Debtor spends several paragraphs in its Reconsideration Motion arguing the merits of the underlying claims that form the basis of the Arbitration and Clipper's right to seek counter-security, neither of which are issues before this Court.  *Id.* at ¶¶ 6-10.  The Debtor even cites to and relies on cases for the proposition that it should be excused from posting counter-security based on limited financial means, *id.* at ¶ 10, citing *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F. 2d 400 (5th Cir. 1987) and *The Beaumont*, 8 F. 2d 599 (4th Cir. 1925), while attempting to introduce evidence concerning the ultimate liability of Clipper in the Arbitration by attaching a Coast Guard report to its Reconsideration Motion.  *See* Reconsideration Motion, Ex. A.

15.     Not only is such evidence irrelevant to the limited issue before this Court, but it is also improperly presented in the context of reconsideration as the Debtor failed to raise it at or prior to the hearing on the Stay Relief Motion when the September 2015 report was long in its possession.  *See Aybar, supra.*  Further, it is important to note that federal law prohibits exactly this type of report from being used as evidence in a civil proceeding and, therefore, the conclusions reached by the United States Coast Guard cannot be considered in this or any other related civil or administrative proceeding among these parties.  *See* 46 U.S.C. § 6308(a) ("Notwithstanding any other provision of law, no part of a report of a [U.S.C.G.] marine casualty

investigation . . . including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.").

16.     The inclusion of the Coast Guard report and the Debtor's persistent arguments as to the merits of the Arrest Action and Arbitration evidence desperation.  Having made tactical decisions to reject the Agreement, initiate Arbitration, and commence the Arrest Action, the Debtor now realizes that it does not want to play by the rules of the game it set into motion, turning instead to this Court to solicit help in tilting the playing field in its favor.

17.     The precedent cited by the Debtor in its Reconsideration Motion is simply a distraction and entirely unrelated to the Debtor's burden in seeking reconsideration of this Court's decision to provide Clipper relief from the automatic stay. There is no misapprehension of law or facts and certainly no "strongly convincing" argument that merits reconsideration of the Stay Relief Order.

WHEREFORE, Clipper respectfully requests the entry of an Order denying the Reconsideration Motion and such other and further relief as this Court deems just and equitable.

Dated: April 12, 2016                    Respectfully submitted,

                                         **MARKUS WILLIAMS YOUNG &**
                                         **ZIMMERMAN LLC**

                                         */s/ John F. Young*
                                         John F. Young, Esq. (#26989)
                                         1700 Lincoln, Suite 4550
                                         Denver, Colorado 80203
                                         Phone: (303) 830-0800 / Fax: (303) 830-0809
                                         jyoung@markuswilliams.com

                                         *Attorney for Creditor, Clipper Cruises, Ltd.*

# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. 3:16-cv-107-MMH-JRK

HAIMARK LINE, LTD.,

      Plaintiff,

v.

CLIPPER CRUISE, LTD., in personam, and
the M/V SAINT LAURENT ex. SEA
VOYAGER, and its tackle, equipment,
engines, appurtenances, freights, etc., in rem.,

      Defendants.

## PLAINTIFF'S, HAIMARK LINE, LTD.'S, MOTION FOR INTERLOCUTORY SALE OF VESSEL AND INCORPORATED MEMORANDUM OF LAW

COMES NOW, Plaintiff, HAIMARK LINE, LTD. ("Haimark"), by and through the undersigned counsel and pursuant to Local Rule 7.05(r) and the Supplemental Admiralty and Maritime Rules ("Supplemental Rules"), and for its Motion for Interlocutory Sale of Vessel and Incorporated Memorandum of Law states as follows:

1.     A Verified Complaint was filed on or about February 2, 2016, alleging entitlement to a maritime lien for breach of a charter party against CLIPPER CRUISE, LTD. ("Clipper") *in personam* and the M/V "SAINT LAURENT" ex. SEA VOYAGER ("Vessel") *in rem*. [D.E. 1].

2.     On February 2, 2016, this Court entered an Order directing the Clerk to issue a Warrant for the Arrest of the Vessel. The Vessel was subsequently arrested. [D.E. 7].

3.     By Order of this Court dated February 2, 2016, Lab Marine, Inc. was appointed Substitute Custodian for the Vessel. [D.E. 9].

4.      Haimark has incurred costs on behalf of the Vessel, including expenses associated with the arrest and payment of a substituted custodian, in the amount of approximately $50,000.00  to date, and will incur additional costs at the rate of approximately $1,000.00 per day going forward.

5.      Hurricane season is approaching and the risks and costs to maintain the vessel will be increased. The Vessel should be sold well in advance of the inclement weather.

6.      Since the date of the arrest, Clipper has taken no actions to release the Vessel from arrest, such as posting a bond or other security, or requesting a hearing with respect to same. Clipper has now stated that it cannot post security. Haimark continues to incur expenses associated with the arrest and custody of the Vessel.

7.      Based on the above, the Vessel and its appurtenances should be forfeited and sold pursuant to L.R. 7.05(r), which outlines the procedures for the U.S. Marshal to follow upon order of a court for the sale of a vessel.

8.      As further demonstrated below, because of Clipper's undue delay and the expense of keeping the Vessel under arrest, good cause exists for the Court to direct the interlocutory sale of the Vessel.

## MEMORANDUM OF LAW

A breach of charter party by a vessel owner creates a maritime lien, which is enforceable *in rem. See, e.g., Fla. Yacht Brokers, Inc. v. Yacht Huckster*, 249 F. Supp. 371 (S.D. Fla. 1965). Further, under Rule C of the Supplemental Rules, it is provided that an action *in rem* is available to enforce a maritime lien. Since the arrest of the Vessel, Clipper has made no demonstrable efforts to post a bond or security for the Vessel, and has now stated that it cannot post security for release of the Vessel.

- 2 -

On motion by a party having custody of a vessel, the court may order the property sold. Supplemental Rule E(9). The movant need only show one condition listed in Supplemental Rule E(9) to justify the interlocutory sale of a vessel. *See, e.g., 20th Century Fox Film Corp. v. MV Ship Agencies,* 992 F. Supp. 1434, 1437 (M.D. Fla. 1997). Those conditions include the deterioration of the vessel, the excessive expense of keeping the vessel under arrest, and the unreasonable delay in securing the release of the vessel. The rationale behind the rule for interlocutory sales focuses on avoiding the complications associated with maintaining a vessel under arrest and does not require the resolution of the case on the merits. *KFW v. M/V Yorktown*, Case No. 3:14-cv-715, 2014 U.S. Dist. LEXIS 91740, at \*7 (M.D. Fla. July 2, 2014).

An interlocutory sale of the Vessel should be ordered for several reasons. First, there is an unreasonable delay in securing the release of the Vessel. This matter has been pending since February 4, 2016, and the only actions undertaken by Clipper have been related to challenging the merits of the underlying claim. Second, since the arrest of the Vessel on February 4, 2016, Haimark has incurred approximately $50,000.00 in expenses related to the arrest of the Vessel and on the Vessel's behalf, and will continue to incur expenses at the rate of approximately *$1000.00 per day.* Third, there are serious "concerns regarding the impact of hurricane season." *See KFW,* 2014 U.S. Dist. LEXIS 91740, at \*7 (directing the interlocutory sale of the vessel where the court was concerned *inter alia* about the impact of hurricane season on the condition of the vessel). The foregoing conditions amply justify the interlocutory sale of the Vessel in order to "avoid[] the complications associated with maintaining a vessel under arrest…". .*KFW,* 2014 U.S. Dist. LEXIS 91740, at \*7. *See also Branch Banking & Trust Co. v. Fishing Vessel Topless*, 2012 U.S. Dist. LEXIS 170296, \*10 (D. Md. Nov. 29, 2012)("Moreover, Sportfishing has made no attempt to post a bond and secure the release of the Vessel, nor has it indicated any

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

intent to do so in the near future. Rule E(5) permits an interested party to post a bond to secure the release of the seized vessel, and failure to post such a bond for an unreasonable period of time, while the value of the vessel deteriorates or the mortgagor incurs other substantial costs, justifies an interlocutory sale”); *Neptune Orient Lines v. Halla Merchant Marine Co*., 1998 U.S. Dist. LEXIS 3745, *21 (E.D. La. Mar. 19, 1998)(ordering the interlocutory sale of the vessel where the action had been initiated three and one half months earlier; no security has been posted for the vessel; and further delay of the sale would be unreasonable, resulting in additional custodia legis and other maintenance expenses); *Ferrous Financial Services Co. v. O/S Arctic Producer,* 567 F. Supp. 400 (W.D. Wash. 1983) (granting interlocutory sale of the vessel where there was an unreasonable delay of 4 months in securing the release of the vessel and the annual expense of keeping it  - $166,000 – was excessive).

CERTIFICATE OF CONFERRAL

Undersigned Counsel has conferred with opposing counsel, but the parties have not been able to reach agreement with respect to the relief sought herein.

WHEREFORE, Plaintiff, HAIMARK LINE, LTD., requests that the Court enter an Order granting this Motion for Interlocutory Sale of Defendant M/V "SAINT LAURENT" EX. SEA VOYAGER; retain the sale proceeds in the registry of the Court as security in lieu of the vessel; and for such other and further relief as deemed necessary and proper.

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

Respectfully submitted,


s/ Allan R. Kelley
Allan R. Kelley
Fla. Bar No. 309893
Email: akelley@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:     (305) 789-9201

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2016, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/ Allan R. Kelley</u>
Allan R. Kelley

## SERVICE LIST

CASE NO. 3:16-cv-00107-MMH-JRK

**James F. Moseley, Jr., Esq.**
Moseley, Prichard, Parrish, Knight & Jones
501 West Bay Street
Jacksonville, FL 32202
E-Mail: jmoseleyjr@mppkj.com
Telephone: (904) 356-1306
Facsimile: (904) 354-0194

4847-2335-6975, v.  2

- 7 -

# EXHIBIT B

1          UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF COLORADO
2
    In the Matter of:                    )
3                                        )
    HAIMARK LINE, LTD.,                  ) Case No.: 15-22180-JGR
4                                        )
              Debtor.                    ) CHAPTER 11
5   _____)

6

7
                TRANSCRIPT OF ORAL RULING
8      REGARDING MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY
     CLIPPER CRUISES LTD. FILED BY FEBRUARY 19, 2016 (DOCKET #175)
9   AND OBJECTION FILED BY DEBTOR HAIMARK LINE, LTD. FILED FEBRUARY
                    23, 2016 (DOCKET #182)
10
           BEFORE THE HONORABLE JOSEPH G. ROSANIA, JR.
11              WEDNESDAY, MARCH 16, 2016; 10:08 AM
                      DENVER, COLORADO
12

13

14

15

16

17
         Proceedings electronically recorded; transcript produced
18  by computer.

19  eScribers, LLC
    700 West 192nd Street
20  Suite #607
    New York, NY 10040
21  (973)406-2250
    operations@escribers.net
22

23  Requested by: John F. Young
    Ordered: 3-16-16
24  Delivered: 3-16-16
    Turnaround Time: Daily
25  Cost: $127.05

```
 1    For the Debtor:
             KutnerBrinenGarber P.C.
 2           By: Jeffrey S. Brinen, Esq. (Telephonically)
                 Benjamin H. Shloss, Esq. (Telephonically)
 3           1660 Lincoln Street
             Suite 1850
 4           Denver, Colorado 80264

 5
      For Clipper Cruises Ltd.:
 6           Markus Williams Young & Zimmermann LLC
             By: John F. Young, Esq.
 7           1700 Lincoln
             Suite 4550
 8           Denver, Colorado 80203

 9
             Blank Rome LLP
10           By: Alan M Root, Esq. (Telephonically)
             1201 Market Street
11           Suite 800
             Wilmington, Delaware 19810
12
             Blank Rome LLP
13           By: Thomas H. Belknap, Jr., Esq. (Telephonically)
             The Chrysler Building
14           405 Lexington Avenue
             New York, New York, 10174
15

16

17

18

19

20

21

22

23

24

25
```

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

I N D E X
MARCH 16, 2016


RULINGS

|                                                      | PAGE | LINE |
| ---------------------------------------------------- | ---- | ---- |
| The motion for relief from stay contains             | 4    | 11   |
| Specific allegations and is ripe for                 |      |      |
| determination                                        |      |      |
| Motion for relief from stay is granted               | 15   | 11   |

1              P R O C E E D I N G S

2              THE COURT:  Good morning.  Be seated, please.

3              So we are here in the case of Haimark Line, Ltd., case

4    number 15-22180, on the Court's oral ruling on Clipper Cruises

5    Ltd.'s motion for relief from stay and the debtor's objection.

6              Let's have appearances on the matter, starting with

7    the parties in the courtroom, counsel in the courtroom.

8              MR. YOUNG:  Good morning, Your Honor.  John Young on

9    behalf of Clipper Cruises.  And on the phone you should have

10   Alan Root and Tom Belknap, co-counsel for Clipper.

11             THE COURT:  Gentlemen, are you on the phone?

12             MR. ROOT:  Yes, yes.  Good afternoon, Your Honor.  Or

13   good morning, your time.  This is Alan Root from Blank Rome.

14   Tom Belknap and I are both on the phone from Blank Rome on

15   behalf of Clipper Cruises.

16             THE COURT:  Thank you.  Other counsel?

17             MR. BRINEN:  Good morning, Your Honor.  Jeff Brinen

18   and Ben Shloss on the phone.

19             THE COURT:  Thank you.

20             MR. BRINEN:  For the debtor.

21             THE COURT:  Of course, thank you.  Any other parties?

22             Thank you.  The matter is before the Court on Clipper

23   Cruises Ltd.'s, hereinafter "Clipper's" motion for relief from

24   stay filed in the case, February 19th, 2016.  Thereafter

25   Haimark Line, Ltd., hereinafter "Haimark" or "debtor" filed its

1    limited objection March 8th, 2016.  Thereafter Clipper filed

2    its memorandum brief in support of its motion, March 11, 2016,

3    and debtor responded with its brief Monday of this week, March

4    14, 2016.

5            A preliminary hearing was conducted on the matter on

6    March 15, 2016.  And the Court received offers of proof from

7    counsel and heard argument of counsel on the motion for relief

8    from stay and the debtor's limited objection.  And the Court

9    notes -- and the Court asked for a brief period of time to be

10   able to review the cases cited by the parties in their

11   respective briefs.

12           The Court notes in general that it does have subject-

13   matter jurisdiction over the matter of this contested matter.

14   It's a motion for relief from stay in a Chapter 11 case, so the

15   Court has subject-matter jurisdiction in this core proceeding

16   under 28 U.S.C. Section 157(b)(2)(G), 28 U.S.C. Section 1334,

17   and the order of reference from the U.S. District Court in this

18   district to the bankruptcy court.  The Court also notes that

19   Congress intended motion for relief from stay matters to be

20   summary proceedings, and the Court has treated this matter as a

21   summary proceeding.  And the ruling that will be entered today

22   should be interpreted as such.

23           So by way of background, Haimark filed its Chapter 11

24   case in this district on October 30, 2015.  The Court has

25   reviewed the entire Chapter 11 file in preparation for its

1   ruling, pleadings of the parties, the briefs, the cases, and

2   notes that there is no unsecured creditors' committee yet

3   appointed in this case.  Debtor indicates, has retained

4   bankruptcy counsel and also retained two sets of litigation

5   counsel.  All of the approval orders for those lawyers were

6   entered by Judge Brooks late December last year.  And the

7   motion to employ one set of counsel was to represent the debtor

8   in an arbitration pending in New York.  The motion to employ

9   the second set of counsel was to employ Florida litigation

10  counsel to represent the debtor in potential litigation in

11  Florida.

12          The background of the matter is, the debtor states its

13  business is it owns and operates a cruise line.  And the debtor

14  had an agreement with Clipper to which there's no dispute:

15  Exhibit 1 of Clipper's exhibits, the time charter party

16  agreement dated July 22nd, 2014, which was the operative

17  agreement between the parties.  Generally, the debtor provided

18  the passengers and Clipper provided the vessel.

19          Things appeared to be sailing along between the

20  parties until June through August 2015, when the incident

21  occurred.  The Court is referencing debtor's answer to

22  statement of financial affairs number 8, and the debtor's

23  position on what happened in connection with the incident on

24  the ship provided by Clipper is described therein.

25          The debtor basically states that the particular ship

1  did not arrive in time.  There was a delayed departure.  And

2  then the ship struck a lock and was damaged, and the cruise had

3  to be cancelled.

4          Clipper has its own -- has defenses to that; disputes

5  the allegations.  And the Court is only noting what the debtor

6  has in its statement of financial affairs to be able to put

7  some color into what happened here.  And so the incident

8  occurred.  There's a disputes between the parties.

9          Haimark filed its Chapter 11 case October 30, 2015.  I

10  believe a demand for arbitration was made at the same time

11  under the time charter party agreement, and that there is an

12  arbitration matter pending in New York.

13          The Court has had several hearings on the matter and

14  has gleaned the facts from the offers of proof, the files, and

15  the pleadings, in order to render today's decision; also

16  reviewed Clipper's exhibits, none of which are materially in

17  dispute.  So that's where we were in the case.

18          The Court also notes that early in the Chapter 11

19  case, the debtor did apply for and the Court granted the

20  debtor's motion to reject the July 22nd, 2004 (sic) agreement

21  with Clipper Cruises.

22          So the next thing that happens is the debtor files a

23  complaint in the district court in Florida, a verified

24  complaint, on February 2, 2016.  And that complaint had other

25  claims for relief with it, and ultimately ended up in an order

1   from the Florida District Court, ordering the arrest or seizure

2   of the ship.  I view that action as in the nature of a pre-

3   judgment writ of attachment.  And so Clipper has moved for

4   relief from stay to continue the arbitration proceeding, to

5   defend itself and assert counterclaims in the arrest action,

6   including a request to the appropriate forum of something

7   called counter-security.  That's the substantive issue.

8           So we have really two issues before the Court for

9   resolution today:  the procedural issue raised by debtor and

10  then the substantive issue regarding the 362(d)(1) request.

11          This motion is filed under 362(d)(1), which provides,

12  for cause the Court can grant relief from the automatic stay.

13  The debtor argues that the movant has not pled with specificity

14  in its motion for relief from stay as required by Local

15  Bankruptcy Rule 4001(a)(4)(A), because there is no specific

16  request in the motion for relief from stay to request counter-

17  security; and furthermore that since the motion for relief from

18  stay was noticed on unsecured creditors in the case, that

19  there's no notice to the unsecured creditors of Clipper's

20  request to request counter-security in the Florida district

21  court action.

22          The Court notes there's no other objection filed to

23  the motion for relief from stay.  And the Court analyzes the

24  motion for relief from stay not only in connection with Local

25  Rule 4001(a)(4)(A); but since the motion is filed under

1   Bankruptcy Procedure 4001, it's a contested matter under

2   Bankruptcy Procedure Rule 9014.  So the Court analyzes the

3   motion both in terms of the local rule and also of the

4   governing law as recently espoused by our Supreme Court, in the

5   Twombly case, Bell Atlantic Corp. v. Twombly, 550 U.S. 544

6   (2007); and shortly thereafter the Ashcroft v. Iqbal case, 556

7   U.S. 662 (2009).

8          Those cases, in reexamining the Federal Rule of

9   Procedures standard of 12(b)(6) for dismissal of cases for

10  failure to state a claim, have raised the bar in our country to

11  require a party to make allegations that are no longer just

12  possible and conceivable, but it's a plausibility standard.  So

13  now these allegations must raise a plausible standard for a

14  claim for relief to sustain a 12(b)(6) motion.

15         The Court also has looked at the motion under Federal

16  Rule of Civil Procedure 8(a) which is the Federal Rule on

17  pleadings.  And even though you could say 7008 doesn't apply

18  here because 9014(c) says it doesn't apply, 9014(c) does give

19  the Court the authority to order that any other rule in the

20  Part 7 section will apply here.  And the Court will apply

21  Federal Rule of Bankruptcy Procedures 7008, which therefore

22  incorporates Federal Rule of Civil Procedures 7008 -- I'm

23  sorry, 8.

24         So under Federal Rule of Civil Procedure 8, a pleading

25  needs to state three things:  jurisdiction, state a claim for

1   relief, make a demand for relief.  And I find that the motion

2   for relief from stay meets both standards of the local rule and

3   the federal rule.  The motion for relief from stay does clearly

4   request the authority to lift the stay to continue with the

5   arbitration proceeding.  It clearly requests the opportunity to

6   defend itself and assert claims in the arrest action.

7          At pages 11 and 12 of the motion, it talks

8   about -- it's the motion for relief from stay to be

9   lifted -- the stay to be lifted to pursue claims and

10  counterclaims.

11         Also in the wherefore clause of the motion, there's

12  certainly a broad request -- and I think that's why lawyers put

13  these requests in the wherefore clause.  Clipper, in the

14  wherefore clause, in the second sentence, requests the

15  automatic stay be lifted so, "as to allow Clipper to defend

16  itself and the ship against the claims being asserted by

17  Haimark in the arrest action, and to take any other necessary

18  and appropriate actions required in the arrest action."

19         And furthermore, it also, to the extent it wasn't

20  clear before, writes a brief on March 11, 2016, requesting that

21  it be allowed to have the request for counter-security be made

22  in context of lifting of the stay.

23         The Court further finds that the debtor-in-

24  possession -- I mean, Haimark is not only a debtor, but it's a

25  debtor-in-possession.  It's a fiduciary.  It's a trustee for

 1   its creditors.  And it's adequately represented the interests

 2   of the unsecured creditors in connection with its objection.

 3            Without going any further on it, therefore, the Court

 4   would, on the procedural issue, rule that the motion for relief

 5   from stay contains specific allegations to allow the order to

 6   enter, and the order is ripe for determination.

 7            On the substantive issue, the bankruptcy court is a

 8   court of limited jurisdiction.  What I have before me is a

 9   limited objection to a limited issue raised by the motion, and

10   therefore the parties will receive a limited ruling on the

11   limited objection to the limited issue.

12            In its papers, the debtor does not object to lifting

13   of the stay to allow Clipper to fully and completely

14   participate in the arbitration action.  So that's off the

15   table.

16            In its papers, the debtor does not object to Clipper's

17   request to enter an appearance in the Florida District Court

18   admiralty action and assert claims and counterclaims.

19            What Clipper (sic) objects to is lifting of the stay

20   to allow Clipper -- I'm sorry.  What the debtor objects to is

21   the lifting of the stay to allow Clipper to request the Florida

22   Federal Admiralty Court to post counter-security.  I enjoyed

23   and will cite the case of Novomar (ph.) International, which

24   was cited by Clipper in its papers, as a really good case

25   explaining the purpose of the rule on counter-security.

1          So what happened, I guess, was Clipper (sic) filed its

2    action in Florida Federal District Court, resulted in an order

3    arresting the ship.  And so the parties -- counsel indicated to

4    me, what that means is either a receiver or some third party

5    actually takes possession of the ship and has it somewhere in

6    hopefully a safe and secure location, but it can't be used by

7    its owner while the action is pending.

8          In the Novomar case, it talks about Supplemental

9    Admiralty Rule E(7)(a), which is the admiralty rule under which

10   Clipper seeks to ask the admiralty court to post counter-

11   security.  And it talks about when a person who has given

12   security for damages in the original action asserts a

13   counterclaim that arises from the transaction or occurrence, a

14   plaintiff for whose benefit the security has been given, which

15   is the debtor here, must give security for damages demanded in

16   the counterclaim, unless the court for good cause shown,

17   directs otherwise.

18         And the case goes on to say, "The intent of the

19   requirement is to place the parties on equality as regards

20   security."  And as the rule indicates, it will be the admiralty

21   court who will make the decision of the existence and any

22   amount of counter-security for good cause shown.

23         The debtor argues that on the surface, the argument is

24   well, if you lift the stay and allow Clipper to request

25   counter-security, and counter-security is granted, then in

1    effect, you've converted an unsecured claim to a secured claim.

2    Debtor cites a case In re Laitasalo, 193 B.R. 187 (S.D.N.Y.

3    1996) in support of this proposition.  The Court respectfully

4    disagrees.

5           The Court notes that Clipper has filed a proof of

6    claim in the case for approximately four million dollars for

7    various sorts of damages.  Clipper has also timely filed a

8    motion for allowance of a Chapter 11 administrative expense

9    claim in the debtor's Chapter 11 case.  Clipper doesn't seek,

10   in my opinion and in my view, nor can it seek to alter or

11   affect or elevate those two particular claims into any kind of

12   a secured claim.  It's clear the request for counter-security

13   is part and parcel of the arrest action, and so in my view,

14   it's similar to many states have prejudgment writ of attachment

15   statutes which usually require a bond.

16          Even if it's found somehow that by allowing the stay

17   to be lifted to allow the request for counter-security to be

18   made and counter-security to be ultimately ordered, even if

19   somehow that does convert some sort of unsecured claim to a

20   secured claim, the Court finds that it's difficult for the

21   debtor to make that argument when the pursuit of the Florida

22   State Court litigation was due to its own business judgment.

23          The debtor initiated the action.  And in this Court's

24   view, it's unfair to cut off Clipper's rights to defend itself

25   in any manner provided by law, especially when the asset seized

1    is a four-million-dollar vessel.

2            The Court reviewed all the cases cited by the parties

3    on the subject.  And the case that I think is the most

4    applicable and is the case upon which the legal analysis

5    relies, is the case of In re Merrick, case number 175 B.R. 333,

6    argued by the bankruptcy -- or ruled on by the Bankruptcy

7    Appellate Panel of the Ninth Circuit, 1994, in my view, a very

8    well-respected Bankruptcy Appellate Panel in our country.

9            And similar facts in this case.  The facts are never

10   the same, it appears to the Court, as to the published cases

11   versus the matter before the Court.  But the facts are fairly

12   similar.  And the issue was whether a defendant violates the

13   stay by defending claims brought by a plaintiff-debtor.

14           And in concluding, no, the Ninth Circuit Bankruptcy

15   Appellate Panel cited Judge Posner and his ruling in a very

16   famous bankruptcy case, In re Martin-Trigona.  Judge Posner is

17   a prolific writer, and he is known -- or at least in my

18   view -- is one of the most brilliant jurists we've ever had in

19   our country.  And the Merrick case cites Judge Posner in the

20   Martin-Trigona case for the proposition, looking at the policy

21   behind the automatic stay that there is "no policy of

22   preventing persons whom the bankrupt has sued from protecting

23   their legal rights."

24           And furthermore, in the Merrick case, the Ninth

25   Circuit Bankruptcy Appellate Panel concludes that the defendant

1    is entitled to have relief from stay to fully and completely

2    defend itself with the following quote:  "Given this freedom

3    for the debtor or the trustee to prosecute the debtor's claims,

4    an equitable principle of fairness requires a defendant to be

5    allowed to defend himself from the attack without imposing on

6    him a gratuitous impediment in dealing with an adversary who

7    suffers no correlative constraint.  The automatic stay should

8    not tie the hands of a defendant while the plaintiff debtor is

9    given free rein to litigate."

10           So therefore, based upon the foregoing rulings on the

11   procedural and the substantive issue, the Court hereby grants

12   Clipper Cruises, Ltd.'s motion for relief from stay under

13   Bankruptcy Code Section 362(d)(1) for cause, to allow it

14   complete and full rein to represent itself in the arbitration

15   proceeding and in the Florida district court action.

16           And finally, the Court also, in its discretion, will

17   waive the fourteen-day stay required by Federal Rule of

18   Bankruptcy Procedure 4000(a)(1) so that this order can be

19   entered.  It'll be entered on the docket today, and the parties

20   can then take the order to their respective other forums and

21   let those forums know that the case can proceed.

22           And also, the Court would be remiss if I didn't say

23   two things.  One is, I appreciate the excellent presentations

24   of counsel.  And second is, it would be really nice if this

25   case could result in a reasonable commercial resolution of the

Haimark Line, Ltd.                                    16

1  claims and defenses raised by the parties.

2            So that'll be the ruling of the Court, and the Court

3  is adjourned.

4            THE CLERK:  All rise.

5        (Proceedings concluded at 10:28 AM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                       C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   PENINA WOLICKI

11   AAERT Certified Electronic Transcriber CET**D-569

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  March 17, 2016

18

19

20

21

22

23

24

25

**A**

**able (2)**
5:10;7:6
**action (14)**
8:2,5,21;10:6,17,
18;11:14,18;12:2,7,
12;13:13,23;15:15
**actions (1)**
10:18
**actually (1)**
12:5
**adequately (1)**
11:1
**adjourned (1)**
16:3
**administrative (1)**
13:8
**admiralty (6)**
11:18,22;12:9,9,
10,20
**adversary (1)**
15:6
**affairs (2)**
6:22;7:6
**affect (1)**
13:11
**afternoon (1)**
4:12
**against (1)**
10:16
**agreement (5)**
6:14,16,17;7:11,20
**Alan (2)**
4:10,13
**allegations (4)**
7:5;9:11,13;11:5
**allow (8)**
10:15;11:5,13,20,
21;12:24;13:17;
15:13
**allowance (1)**
13:8
**allowed (2)**
10:21;15:5
**allowing (1)**
13:16
**along (1)**
6:19
**alter (1)**
13:10
**amount (1)**
12:22
**analysis (1)**
14:4
**analyzes (2)**
8:23;9:2
**appearance (1)**
11:17
**appearances (1)**
4:6
**appeared (1)**

**6:19**
**appears (1)**
14:10
**Appellate (4)**
14:7,8,15,25
**applicable (1)**
14:4
**apply (5)**
7:19;9:17,18,20,20
**appointed (1)**
6:3
**appreciate (1)**
15:23
**appropriate (2)**
8:6;10:18
**approval (1)**
6:5
**approximately (1)**
13:6
**arbitration (7)**
6:8;7:10,12;8:4;
10:5;11:14;15:14
**argued (1)**
14:6
**argues (2)**
8:13;12:23
**argument (3)**
5:7;12:23;13:21
**arises (1)**
12:13
**arrest (6)**
8:1,5;10:6,17,18;
13:13
**arresting (1)**
12:3
**arrive (1)**
7:1
**Ashcroft (1)**
9:6
**assert (3)**
8:5;10:6;11:18
**asserted (1)**
10:16
**asserts (1)**
12:12
**asset (1)**
13:25
**Atlantic (1)**
9:5
**attachment (2)**
8:3;13:14
**attack (1)**
15:5
**August (1)**
6:20
**authority (2)**
9:19;10:4
**automatic (4)**
8:12;10:15;14:21;
15:7

**B**

**background (2)**
5:23;6:12
**bankrupt (1)**
14:22
**bankruptcy (15)**
5:18;6:4;8:15;9:1,
2,21;11:7;14:6,6,8,
14,16,25;15:13,18
**bar (1)**
9:10
**based (1)**
15:10
**basically (1)**
6:25
**behalf (2)**
4:9,15
**behind (1)**
14:21
**Belknap (2)**
4:10,14
**Bell (1)**
9:5
**Ben (1)**
4:18
**benefit (1)**
12:14
**Blank (2)**
4:13,14
**bond (1)**
13:15
**both (3)**
4:14;9:3;10:2
**BR (2)**
13:2;14:5
**brief (4)**
5:2,3,9;10:20
**briefs (2)**
5:11;6:1
**brilliant (1)**
14:18
**Brinen (3)**
4:17,17,20
**broad (1)**
10:12
**Brooks (1)**
6:6
**brought (1)**
14:13
**business (2)**
6:13;13:22

**C**

**called (1)**
8:7
**can (5)**
8:12;13:10;15:18,
20,21
**cancelled (1)**
7:3
**case (30)**
4:3,3,24;5:14,24;
6:3;7:9,17,19;8:18;

**9:5,6;11:23,24;12:8,**
**18;13:2,6,9;14:3,4,5,**
**5,9,16,19,20,24;**
**15:21,25**
**cases (6)**
5:10;6:1;9:8,9;
14:2,10
**cause (4)**
8:12;12:16,22;
15:13
**certainly (1)**
10:12
**Chapter (7)**
5:14,23,25;7:9,18;
13:8,9
**charter (2)**
6:15;7:11
**Circuit (3)**
14:7,14,25
**cite (1)**
11:23
**cited (4)**
5:10;11:24;14:2,
15
**cites (2)**
13:2;14:19
**Civil (3)**
9:16,22,24
**claim (10)**
9:10,14,25;13:1,1,
6,9,12,19,20
**claims (9)**
7:25;10:6,9,16;
11:18;13:11;14:13;
15:3;16:1
**clause (3)**
10:11,13,14
**clear (2)**
10:20;13:12
**clearly (2)**
10:3,5
**CLERK (1)**
16:4
**Clipper (26)**
4:4,9,10,15,22;5:1;
6:14,18,24;7:4,21;
8:3;10:13,15;11:13,
19,20,21,24;12:1,10,
24;13:5,7,9;15:12
**Clipper's (6)**
4:23;6:15;7:16;
8:19;11:16;13:24
**co-counsel (1)**
4:10
**Code (1)**
15:13
**color (1)**
7:7
**commercial (1)**
15:25
**committee (1)**
6:2
**complaint (3)**

**7:23,24,24**
**complete (1)**
15:14
**completely (1)**
11:13;15:1
**conceivable (1)**
9:12
**concluded (1)**
16:5
**concludes (1)**
14:25
**concluding (1)**
14:14
**conducted (1)**
5:5
**Congress (1)**
5:19
**connection (3)**
6:23;8:24;11:2
**constraint (1)**
15:7
**contains (1)**
11:5
**contested (2)**
5:13;9:1
**context (1)**
10:22
**continue (2)**
8:4;10:4
**convert (1)**
13:19
**converted (1)**
13:1
**core (1)**
5:15
**Corp (1)**
9:5
**correlative (1)**
15:7
**counsel (11)**
4:7,16;5:7,7;6:4,5,
7,9,10;12:3;15:24
**counter- (2)**
8:16;12:10
**counterclaim (2)**
12:13,16
**counterclaims (3)**
8:5;10:10;11:18
**counter-security (11)**
8:7,20;10:21;
11:22,25;12:22,25,
25;13:12,17,18
**country (3)**
9:10;14:8,19
**course (1)**
4:21
**COURT (56)**
4:2,11,16,19,21,
22;5:6,8,9,12,15,17,
18,18,20,24;6:21;
7:5,13,18,19,23;8:1,
8,12,21,22,23;9:2,4,
15,19,20;10:23;11:3,

7,8,17,22;12:2,10,16,
21;13:3,5,20,22;
14:2,10,11;15:11,15,
16,22;16:2,2
**courtroom (2)**
4:7,7
**Court's (2)**
4:4;13:23
**creditors (4)**
8:18,19;11:1,2
**creditors' (1)**
6:2
**cruise (2)**
6:13;7:2
**Cruises (6)**
4:4,9,15,23;7:21;
15:12
**cut (1)**
13:24

**D**

**damaged (1)**
7:2
**damages (3)**
12:12,15;13:7
**dated (1)**
6:16
**dealing (1)**
15:6
**debtor (26)**
4:20,25;5:3;6:3,7,
10,12,13,17,25;7:5,
19,22;8:9,13;10:24;
11:12,16,20;12:15,
23;13:2,21,23;15:3,8
**debtor-in- (1)**
10:23
**debtor-in-possession (1)**
10:25
**debtor's (7)**
4:5;5:8;6:21,22;
7:20;13:9;15:3
**December (1)**
6:6
**decision (2)**
7:15;12:21
**defend (6)**
8:5;10:6,15;13:24;
15:2,5
**defendant (4)**
14:12,25;15:4,8
**defending (1)**
14:13
**defenses (2)**
7:4;16:1
**delayed (1)**
7:1
**demand (2)**
7:10;10:1
**demanded (1)**
12:15
**departure (1)**

7:1
**described (1)**
6:24
**determination (1)**
11:6
**difficult (1)**
13:20
**directs (1)**
12:17
**disagrees (1)**
13:4
**discretion (1)**
15:16
**dismissal (1)**
9:9
**dispute (2)**
6:14;7:17
**disputes (2)**
7:4,8
**District (9)**
5:17,18,24;7:23;
8:1,20;11:17;12:2;
15:15
**docket (1)**
15:19
**dollars (1)**
13:6
**due (1)**
13:22

**E**

**E7a (1)**
12:9
**early (1)**
7:18
**effect (1)**
13:1
**either (1)**
12:4
**elevate (1)**
13:11
**employ (3)**
6:7,8,9
**ended (1)**
7:25
**enjoyed (1)**
11:22
**enter (2)**
11:6,17
**entered (4)**
5:21;6:6;15:19,19
**entire (1)**
5:25
**entitled (1)**
15:1
**equality (1)**
12:19
**equitable (1)**
15:4
**especially (1)**
13:25
**espoused (1)**

9:4
**even (3)**
9:17;13:16,18
**excellent (1)**
15:23
**Exhibit (1)**
6:15
**exhibits (2)**
6:15;7:16
**existence (1)**
12:21
**expense (1)**
13:8
**explaining (1)**
11:25
**extent (1)**
10:19

**F**

**facts (4)**
7:14;14:9,9,11
**failure (1)**
9:10
**fairly (1)**
14:11
**fairness (1)**
15:4
**famous (1)**
14:16
**February (2)**
4:24;7:24
**Federal (10)**
9:8,15,16,21,22,
24;10:3;11:22;12:2;
15:17
**fiduciary (1)**
10:25
**file (1)**
5:25
**filed (11)**
4:24,25;5:1,23;
7:9;8:11,22,25;12:1;
13:5,7
**files (2)**
7:14,22
**finally (1)**
15:16
**financial (2)**
6:22;7:6
**find (1)**
10:1
**finds (2)**
10:23;13:20
**Florida (10)**
6:9,11;7:23;8:1,
20;11:17,21;12:2;
13:21;15:15
**following (1)**
15:2
**foregoing (1)**
15:10
**forum (1)**

8:6
**forums (2)**
15:20,21
**found (1)**
13:16
**four (1)**
13:6
**four-million-dollar (1)**
14:1
**fourteen-day (1)**
15:17
**free (1)**
15:9
**freedom (1)**
15:2
**full (1)**
15:14
**fully (2)**
11:13;15:1
**further (2)**
10:23;11:3
**furthermore (3)**
8:17;10:19;14:24

**G**

**general (1)**
5:12
**Generally (1)**
6:17
**Gentlemen (1)**
4:11
**given (4)**
12:11,14;15:2,9
**gleaned (1)**
7:14
**goes (1)**
12:18
**Good (8)**
4:2,8,12,13,17;
11:24;12:16,22
**governing (1)**
9:4
**grant (1)**
8:12
**granted (2)**
7:19;12:25
**grants (1)**
15:11
**gratuitous (1)**
15:6
**guess (1)**
12:1

**H**

**Haimark (7)**
4:3,25,25;5:23;
7:9;10:17,24
**hands (1)**
15:8
**happened (3)**
6:23;7:7;12:1

**happens (1)**
7:22
**heard (1)**
5:7
**hearing (1)**
5:5
**hearings (1)**
7:13
**hereby (1)**
15:11
**hereinafter (2)**
4:23,25
**himself (1)**
15:5
**Honor (3)**
4:8,12,17
**hopefully (1)**
12:6

**I**

**impediment (1)**
15:6
**imposing (1)**
15:5
**incident (3)**
6:20,23;7:7
**including (1)**
8:6
**incorporates (1)**
9:22
**indicated (1)**
12:3
**indicates (2)**
6:3;12:20
**initiated (1)**
13:23
**intended (1)**
5:19
**intent (1)**
12:18
**interests (1)**
11:1
**International (1)**
11:23
**interpreted (1)**
5:22
**into (2)**
7:7;13:11
**Iqbal (1)**
9:6
**issue (9)**
8:7,9,10;11:4,7,9,
11;14:12;15:11
**issues (1)**
8:8

**J**

**Jeff (1)**
4:17
**John (1)**
4:8

**Judge (4)**
6:6;14:15,16,19
**judgment (2)**
8:3;13:22
**July (2)**
6:16;7:20
**June (1)**
6:20
**jurisdiction (4)**
5:13,15;9:25;11:8
**jurists (1)**
14:18

**K**

**kind (1)**
13:11
**known (1)**
14:17

**L**

**Laitasalo (1)**
13:2
**last (1)**
6:6
**late (1)**
6:6
**law (2)**
9:4;13:25
**lawyers (2)**
6:5;10:12
**least (1)**
14:17
**legal (2)**
14:4,23
**lift (2)**
10:4;12:24
**lifted (4)**
10:9,9,15;13:17
**lifting (4)**
10:22;11:12,19,21
**limited (8)**
5:1,8;11:8,9,9,10,
11,11
**Line (3)**
4:3,25;6:13
**litigate (1)**
15:9
**litigation (4)**
6:4,9,10;13:22
**Local (4)**
8:14,24;9:3;10:2
**location (1)**
12:6
**lock (1)**
7:2
**longer (1)**
9:11
**looked (1)**
9:15
**looking (1)**
14:20

**Ltd (2)**
4:3,25
**Ltd's (3)**
4:5,23;15:12

**M**

**manner (1)**
13:25
**many (1)**
13:14
**March (5)**
5:1,2,3,6;10:20
**Martin-Trigona (2)**
14:16,20
**materially (1)**
7:16
**matter (12)**
4:6,22;5:5,13,13,
13,20;6:12;7:12,13;
9:1;14:11
**matters (1)**
5:19
**mean (1)**
10:24
**means (1)**
12:4
**meets (1)**
10:2
**memorandum (1)**
5:2
**Merrick (3)**
14:5,19,24
**million (1)**
13:6
**Monday (1)**
5:3
**morning (4)**
4:2,8,13,17
**most (2)**
14:3,18
**motion (28)**
4:5,23;5:2,7,14,19;
6:7,8;7:20;8:11,14,
16,17,23,24,25;9:3,
14,15;10:1,3,7,8,11;
11:4,9;13:8;15:12
**movant (1)**
8:13
**moved (1)**
8:3
**must (2)**
9:13;12:15

**N**

**nature (1)**
8:2
**necessary (1)**
10:17
**needs (1)**
9:25
**New (2)**

**6:8;7:12
next (1)**
7:22
**nice (1)**
15:24
**Ninth (3)**
14:7,14,24
**none (1)**
7:16
**nor (1)**
13:10
**notes (7)**
5:9,12,18;6:2;
7:18;8:22;13:5
**notice (1)**
8:19
**noticed (1)**
8:18
**noting (1)**
7:5
**Novomar (2)**
11:23;12:8
**number (3)**
4:4;6:22;14:5

**O**

**object (2)**
11:12,16
**objection (7)**
4:5;5:1,8;8:22;
11:2,9,11
**objects (2)**
11:19,20
**occurred (2)**
6:21;7:8
**occurrence (1)**
12:13
**October (2)**
5:24;7:9
**off (2)**
11:14;13:24
**offers (2)**
5:6;7:14
**one (3)**
6:7;14:18;15:23
**only (3)**
7:5;8:24;10:24
**operates (1)**
6:13
**operative (1)**
6:16
**opinion (1)**
13:10
**opportunity (1)**
10:5
**oral (1)**
4:4
**order (9)**
5:17;7:15,25;9:19;
11:5,6;12:2;15:18,20
**ordered (1)**
13:18

**ordering (1)**
8:1
**orders (1)**
6:5
**original (1)**
12:12
**otherwise (1)**
12:17
**over (1)**
5:13
**own (2)**
7:4;13:22
**owner (1)**
12:7
**owns (1)**
6:13

**P**

**pages (1)**
10:7
**Panel (2)**
14:7,8,15,25
**papers (3)**
11:12,16,24
**parcel (1)**
13:13
**Part (2)**
9:20;13:13
**participate (1)**
11:14
**particular (2)**
6:25;13:11
**parties (13)**
4:7,21;5:10;6:1,
17,20;7:8;11:10;
12:3,19;14:2;15:19;
16:1
**party (4)**
6:15;7:11;9:11;
12:4
**passengers (1)**
6:18
**pending (3)**
6:8;7:12;12:7
**period (1)**
5:9
**person (1)**
12:11
**persons (1)**
14:22
**ph (1)**
11:23
**phone (4)**
4:9,11,14,18
**place (1)**
12:19
**plaintiff (2)**
12:14;15:8
**plaintiff-debtor (1)**
14:13
**plausibility (1)**
9:12

**plausible (1)**
9:13
**pleading (1)**
9:24
**pleadings (3)**
6:1;7:15;9:17
**please (1)**
4:2
**pled (1)**
8:13
**policy (2)**
14:20,21
**position (1)**
6:23
**Posner (3)**
14:15,16,19
**possession (2)**
10:24;12:5
**possible (1)**
9:12
**post (2)**
11:22;12:10
**potential (1)**
6:10
**pre- (1)**
8:2
**prejudgment (1)**
13:14
**preliminary (1)**
5:5
**preparation (1)**
5:25
**presentations (1)**
15:23
**preventing (1)**
14:22
**principle (1)**
15:4
**procedural (3)**
8:9;11:4;15:11
**Procedure (5)**
9:1,2,16,24;15:18
**Procedures (3)**
9:9,21,22
**proceed (1)**
15:21
**proceeding (5)**
5:15,21;8:4;10:5;
15:15
**proceedings (2)**
5:20;16:5
**prolific (1)**
14:17
**proof (3)**
5:6;7:14;13:5
**proposition (2)**
13:3;14:20
**prosecute (1)**
15:3
**protecting (1)**
14:22
**provided (4)**
6:17,18,24;13:25

**provides (1)**
　8:11
**published (1)**
　14:10
**purpose (1)**
　11:25
**pursue (1)**
　10:9
**pursuit (1)**
　13:21
**put (2)**
　7:6;10:12

## Q

**quote (1)**
　15:2

## R

**raise (1)**
　9:13
**raised (4)**
　8:9;9:10;11:9;16:1
**re (3)**
　13:2;14:5,16
**really (3)**
　8:8;11:24;15:24
**reasonable (1)**
　15:25
**receive (1)**
　11:10
**received (1)**
　5:6
**receiver (1)**
　12:4
**recently (1)**
　9:4
**reexamining (1)**
　9:8
**reference (1)**
　5:17
**referencing (1)**
　6:21
**regarding (1)**
　8:10
**regards (1)**
　12:19
**rein (2)**
　15:9,14
**reject (1)**
　7:20
**relief (22)**
　4:5,23;5:7,14,19;
　7:25;8:4,12,14,16,
　17,23,24;9:14;10:1,
　1,2,3,8;11:4;15:1,12
**relies (1)**
　14:5
**remiss (1)**
　15:22
**render (1)**
　7:15

**represent (3)**
　6:7,10;15:14
**represented (1)**
　11:1
**request (14)**
　8:6,10,16,16,20,
　20;10:4,12,21;11:17,
　21;12:24;13:12,17
**requesting (1)**
　10:20
**requests (3)**
　10:5,13,14
**require (4)**
　9:11;13:15
**required (3)**
　8:14;10:18;15:17
**requirement (1)**
　12:19
**requires (1)**
　15:4
**resolution (2)**
　8:9;15:25
**respectfully (1)**
　13:3
**respective (2)**
　5:11;15:20
**responded (1)**
　5:3
**result (1)**
　15:25
**resulted (1)**
　12:2
**retained (2)**
　6:3,4
**review (1)**
　5:10
**reviewed (3)**
　5:25;7:16;14:2
**rights (2)**
　13:24;14:23
**ripe (1)**
　11:6
**rise (1)**
　16:4
**Rome (2)**
　4:13,14
**Root (3)**
　4:10,12,13
**Rule (19)**
　8:15,25;9:2,3,8,16,
　16,19,21,22,24;10:2,
　3;11:4,25;12:9,9,20;
　15:17
**ruled (1)**
　14:6
**ruling (6)**
　4:4;5:21;6:1;
　11:10;14:15;16:2
**rulings (1)**
　15:10

## S

**safe (1)**
　12:6
**sailing (1)**
　6:19
**same (2)**
　7:10;14:10
**SDNY (1)**
　13:2
**seated (1)**
　4:2
**second (3)**
　6:9;10:14;15:24
**Section (4)**
　5:16,16;9:20;
　15:13
**secure (1)**
　12:6
**secured (3)**
　13:1,12,20
**security (6)**
　8:17;12:11,12,14,
　15,20
**seek (2)**
　13:9,10
**seeks (1)**
　12:10
**seized (1)**
　13:25
**seizure (1)**
　8:1
**sentence (1)**
　10:14
**set (2)**
　6:7,9
**sets (1)**
　6:4
**several (1)**
　7:13
**ship (7)**
　6:24,25;7:2;8:2;
　10:16;12:3,5
**Shloss (1)**
　4:18
**shortly (1)**
　9:6
**shown (2)**
　12:16,22
**sic (3)**
　7:20;11:19;12:1
**similar (3)**
　13:14;14:9,12
**somehow (2)**
　13:16,19
**somewhere (1)**
　12:5
**sorry (2)**
　9:23;11:20
**sort (1)**
　13:19
**sorts (1)**
　13:7
**specific (2)**
　8:15;11:5

**specificity (1)**
　8:13
**standard (3)**
　9:9,12,13
**standards (1)**
　10:2
**starting (1)**
　4:6
**state (4)**
　9:10,25,25;13:22
**statement (2)**
　6:22;7:6
**states (3)**
　6:12,25;13:14
**statutes (1)**
　13:15
**stay (31)**
　4:5,24;5:8,14,19;
　8:4,12,14,16,18,23,
　24;10:2,3,4,8,9,15,
　22;11:5,13,19,21;
　12:24;13:16;14:13,
　21;15:1,7,12,17
**struck (1)**
　7:2
**subject (1)**
　14:3
**subject- (1)**
　5:12
**subject-matter (1)**
　5:15
**substantive (4)**
　8:7,10;11:7;15:11
**sued (1)**
　14:22
**suffers (1)**
　15:7
**summary (2)**
　5:20,21
**Supplemental (1)**
　12:8
**support (2)**
　5:2;13:3
**Supreme (1)**
　9:4
**surface (1)**
　12:23
**sustain (1)**
　9:14

## T

**table (1)**
　11:15
**talks (3)**
　10:7;12:8,11
**terms (1)**
　9:3
**that'll (1)**
　16:2
**Thereafter (3)**
　4:24;5:1;9:6
**therefore (4)**

**9:21;11:3,10;**
　15:10
**therein (1)**
　6:24
**third (1)**
　12:4
**though (1)**
　9:17
**three (1)**
　9:25
**tie (1)**
　15:8
**timely (1)**
　13:7
**today (3)**
　5:21;8:9;15:19
**today's (1)**
　7:15
**Tom (2)**
　4:10,14
**transaction (1)**
　12:13
**treated (1)**
　5:20
**trustee (2)**
　10:25;15:3
**two (4)**
　6:4;8:8;13:11;
　15:23
**Twombly (2)**
　9:5,5

## U

**ultimately (2)**
　7:25;13:18
**under (9)**
　5:16;7:11;8:11,25;
　9:1,15,24;12:9;15:12
**unfair (1)**
　13:24
**unless (1)**
　12:16
**unsecured (6)**
　6:2;8:18,19;11:2;
　13:1,19
**up (1)**
　7:25
**upon (2)**
　14:4;15:10
**USC (2)**
　5:16,16
**used (1)**
　12:6
**usually (1)**
　13:15

## V

**various (1)**
　13:7
**verified (1)**
　7:23

HAIMARK LINE, LTD.
Case No.: 15-22180-JGR

March 16, 2016

**versus (1)**
  14:11
**vessel (2)**
  6:18;14:1
**view (6)**
  8:2;13:10,13,24;
  14:7,18
**violates (1)**
  14:12

### W

**waive (1)**
  15:17
**way (1)**
  5:23
**week (1)**
  5:3
**well-respected (1)**
  14:8
**wherefore (3)**
  10:11,13,14
**whose (1)**
  12:14
**Without (2)**
  11:3;15:5
**writ (2)**
  8:3;13:14
**writer (1)**
  14:17
**writes (1)**
  10:20

### Y

**year (1)**
  6:6
**York (2)**
  6:8;7:12
**YOUNG (2)**
  4:8,8

### 1

**1 (1)**
  6:15
**10:28 (1)**
  16:5
**11 (10)**
  5:2,14,23,25;7:9,
  18;10:7,20;13:8,9
**12 (1)**
  10:7
**12b6 (2)**
  9:9,14
**1334 (1)**
  5:16
**14 (1)**
  5:4
**15 (1)**
  5:6
**15-22180 (1)**
  4:4

**157b2G (1)**
  5:16
**175 (1)**
  14:5
**187 (1)**
  13:2
**193 (1)**
  13:2
**1994 (1)**
  14:7
**1996 (1)**
  13:3
**19th (1)**
  4:24

### 2

**2 (1)**
  7:24
**2004 (1)**
  7:20
**2007 (1)**
  9:6
**2009 (1)**
  9:7
**2014 (1)**
  6:16
**2015 (3)**
  5:24;6:20;7:9
**2016 (7)**
  4:24;5:1,2,4,6;
  7:24;10:20
**22nd (2)**
  6:16;7:20
**28 (2)**
  5:16,16

### 3

**30 (2)**
  5:24;7:9
**333 (1)**
  14:5
**362d1 (3)**
  8:10,11;15:13

### 4

**4000a1 (1)**
  15:18
**4001 (1)**
  9:1
**4001a4A (2)**
  8:15,25

### 5

**544 (1)**
  9:5
**550 (1)**
  9:5
**556 (1)**
  9:6

### 6

**662 (1)**
  9:7

### 7

**7 (1)**
  9:20
**7008 (3)**
  9:17,21,22

### 8

**8 (3)**
  6:22;9:23,24
**8a (1)**
  9:16
**8th (1)**
  5:1

### 9

**9014 (1)**
  9:2
**9014c (2)**
  9:18,18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on April 12, 2016, I served by prepaid first class mail a copy of the foregoing on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and the Colorado LBR at the following addresses:

**Jeffrey S. Brinen**
**Benjamin H. Sholoss**
1660 Lincoln St., Ste. 1850
Denver, CO 80264

**Daniel J. Morse**
308 W. 21st St., Ste. 203
Cheyenne, WY 82001

**Duncan E. Barber**
4582 S. Ulster St. Pkwy., Ste. 1650
Denver, CO  80237

**Ethan Birnberg**
**John C. Smiley**
600 17th St., Ste. 1800 South
Denver, CO 80202

**Edward P. Timmins**
450 E. 17th Ave. Ste. 210
Denver, CO  80203

**Daniel Glasser**
2000 S. Colorado Blvd., Tower I
Suite 7500
Denver, CO 80222

**Paul W. Rodney**
370 17th St., Ste. 4400
Denver, CO 80202

**John C. Smiley**
600 17th St., Ste. 1800-S
Denver, CO  80202

**Torben Welch**
1430 Wynkoop St., Ste. 400
Denver, CO  80202

/s/John F. Young